UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-2286(DSD/SER)

Steven L. Wirtz,

    Plaintiff,

v.

JPMorgan Chase Bank, N.A. and
Specialized Loan Servicing, LLC,

    Defendants.

  Daniel M. Eaton, Esq. and Christensen Law Office PLLC, 800 Washington Ave. N., Suite 704, Minneapolis, MN 55401, counsel for plaintiff.

  Jared M. Goerlitz, Esq. and Peterson, Fram & Bergman, PA, 55 East 5th Street, Suite 800, St. Paul, MN 55101, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Steven L. Wirtz and defendant Specialized Loan Servicing, LLC (SLS). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants both motions in part.

**BACKGROUND**

This mortgage dispute arises out of SLS's admittedly incorrect assertion that Wirtz was delinquent on his mortgage loan payments. SLS, a mortgage servicer, collects mortgage payments and addresses delinquency issues. Poch Dep. at 11:19-12:12.

On August 8, 2001, ABM Amro Mortgage Group, Inc. loaned Wirtz $83,300.00 to purchase a home, secured by a mortgage on the

property. Eaton Aff. Exs. A and B. JPMorgan Chase Bank, N.A. (Chase) serviced the loan until June 17, 2013. The mortgage requires that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due for [escrow items].... Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." Id. Ex. A, at 3. On August 24, 2010, Chase incorrectly applied a payment on Wirtz's account entirely towards reducing the principal balance, rather than in the correct order of priority. If Chase had correctly applied that payment, Wirtz's account would have been current; instead, it was deemed to be one month late. Wirtz was not aware of that mistake.

On June 17, 2013, SLS replaced Chase as the loan servicer. Poch Dep. at 16:17-17:6. SLS was supposed to obtain from Chase copies of Wirtz's payment history, loan servicing comments, mortgage, promissory note, and "all of the information that is housed in [Chase's] loan servicing platform." Id. at 19:3-12. However, SLS only obtained Wirtz's payment history dating back to June 11, 2011. Id. at 25:25-26:7. Despite SLS's knowledge that the loan originated in 2001, it made no attempt to obtain any prior servicing records. Id. at 34:6-23.

On June 23, 2013, SLS sent Wirtz a letter stating that his loan was past due. Goerlitz Aff. Ex. 1. Wirtz called SLS and told a representative that he had made all his payments. Eaton Aff. Ex. F. The representative told Wirtz that he would "research why the prior history and why the prior servicer is saying you are delinquent" and "call you back and let you know which payments we're showing as being missing." Id. After two weeks of silence, Wirtz called SLS again. Over the next two months, Wirtz called SLS three times and unsuccessfully tried to get the error corrected. Id. Exs. G, H, and J.

Wirtz then contacted the Minnesota Attorney General's office, which sent a letter to SLS on his behalf on October 9, 2013. Id. Ex. L. The attorney general's office stated that Wirtz "wants SLS to reflect that his loan is not delinquent and that he is current, remove any late charges SLS has assessed to his account, and provide him with an up-to-date status of his loan." Id. SLS reviewed Wirtz's payment history dating back to June 11, 2011, but did not request earlier records. Poch Dep. at 25:25-35:2. Accordingly, SLS failed to uncover the error that occurred on August 24, 2010, and incorrectly determined that Wirtz was delinquent on his payments. Id.

On October 18, 2013, SLS sent a letter to Wirtz stating its finding that he was delinquent. Eaton Aff. Ex. M. Despite only having records dating back to 2011, SLS asserted that Wirtz's

account "has been delinquent since the date that Chase began servicing the mortgage loan." Id. SLS also stated that, if Wirtz had "evidence that his account did not transfer to Chase in a delinquent status, we require that he provide us with evidence of this fact by contacting the company that was servicing his mortgage loan prior to Chase and providing us with a copy of their payment history." Id.

On November 8, 2013, Wirtz's attorney sent a qualified written request (QWR) to SLS under the Real Estate Settlement Procedures Act (RESPA). Id. Ex. P. Wirtz's first request was that SLS provide a breakdown of every payment "from origination to present." Id. Specifically, Wirtz requested for each payment received from origination to present, "the amount of the payment, the date received, the date posted to the account, how the payment was applied or credited indicating the portion, if any, applied or credited to principal, interest, escrow, suspense or other treatment, and the month to which the payment was applied." Id. Wirtz sent additional QWRs to SLS on November 12 and 25, 2013, stating that he had "made all required monthly payments" and noting that the error most likely occurred sometime after June 26, 2008. Id. Exs. P and Q.

On December 9, 2013, SLS responded to Wirtz's QWRs. Id. Ex. S. Rather than address the requests in the QWRs, SLS cited its letter from October 18 and "confirmed [its] previous responses as

4

accurate." Id.  SLS erroneously reaffirmed that Wirtz's "mortgage loan transferred to Chase bank in delinquent status." Id.  SLS once again failed to retrieve any records from before June 11, 2011, but instead asked Wirtz, "Please provide us with a copy of the payment history from the servicer prior to Chase bank servicing your loan for further research and review." Id.  SLS stated that it considered the matter resolved. Id.

Wirtz obtained bank statements dating back to 2002, at a cost of $80, and highlighted every mortgage payment.  Wirtz Aff. ¶ 3; Poch Dep. at 61:17-62:1, 90:20-22.  On December 27, 2013, Wirtz sent another QWR to SLS and attached the bank statements.  Eaton Aff. Ex. T.  Wirtz again asserted that he was not delinquent, had made all the necessary payments, and requested reimbursement for the $80 he spent obtaining the bank statements. Id.

Despite the new information that Wirtz provided, SLS sent a letter to him on February 5, 2014, citing its previous responses and again stating that it considered the matter resolved. Id. Ex. I.  SLS noted the payments Wirtz had made since 2011, but made no mention of the payments dating back to 2002 except to deny his request for reimbursement of the $80. Id.  SLS again stated that Wirtz's account was delinquent.

Since SLS began servicing Wirtz's loan, it has charged him at least $418.17 in late fees and charges, although it has since waived several of those fees. Id. ¶ 25; Goerlitz Aff. ¶ 3; id. Ex.

5

7. SLS has also submitted incorrect credit reports asserting that Wirtz is at least 30 days late on his loan payments. Eaton Aff. Ex. V. SLS continues to submit such reports.

On May 1, 2015, Wirtz filed a complaint against SLS and Chase,[1] alleging violations of RESPA, the Fair Debt Collection Practices Act (FDCPA), Minnesota's Mortgage Originator and Servicer Licensing Act (MOSLA), and breach of the implied covenant of good faith and fair dealing and breach of the mortgage agreement.[2] Wirtz and SLS now bring cross-motions for summary judgment.

### DISCUSSION

**I.  Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id.

---

[1] On December 4, 2015, Wirtz and Chase filed stipulation of dismissing with prejudice Wirtz's claims against Chase. ECF No. 21. The court issued an order consistent with the stipulation. ECF No. 22.

[2] Wirtz is no longer pursuing a claim against SLS for breach of the mortgage agreement. ECF No. 36, at 38.

at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Real Estate Settlement Procedures Act**

Wirtz argues that SLS violated RESPA by failing to conduct an investigation and make appropriate corrections in response to the QWRs. SLS responds that the QWRs lacked the requisite specificity, which relieved SLS of its duties to investigate and correct the error. Specifically, SLS argues that the QWRs did not raise any concerns that the error may have occurred before 2011.

RESPA should be construed liberally to serve the statute's "consumer protection objective." Watt v. GMAC Mortg. Corp., 457 F.3d 781, 783 (8th Cir. 2006). A QWR must include "a statement of the reasons for the belief of the borrower, to the extent

7

applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). In response to a QWR, a servicer must either "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties," or "after conducting an investigation, provide the borrower with a written explanation" as to why the servicer believes the account is correct or why the requested information is unavailable. Id. § 2605(e)(2). "[A]ny request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond." Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 687 (7th Cir. 2011).

Wirtz's first QWR on November 8, 2013, requested that SLS provide a breakdown of Wirtz's payments since origination. He specifically requested that SLS indicate how the payments were apportioned between the interest, principal, etc., based the priorities established in the mortgage. The request provided sufficient detail to invoke SLS's affirmative duty to investigate and provide the requested information. Moreover, if SLS had investigated the request, it could have discovered and corrected the error. SLS's failure do so plainly violated RESPA.

The same holds true for SLS's response to the December 27, 2013, QWR, to which Wirtz attached his bank statements containing

8

his loan payment history dating back to 2002. SLS did not address the statements and instead denied Wirtz's request for reimbursement. SLS's failure to investigate and correct the error violated RESPA.

SLS argues that Wirtz's QWRs do not specify where exactly the error occurred, and that RESPA does not require a servicer to perform a full audit. RESPA required Wirtz to state his "reasons for the belief ... that the account is in error." 12 U.S.C. § 2605(e)(1)(B). Wirtz met his obligation by explaining that he was not delinquent because he had "made all required monthly payments." Eaton Aff. Ex. Q. SLS, and not Wirtz, was in a position to determine when and how the error occurred. Although Wirtz was unable to identify the point of error, he provided as much information as possible. SLS made minimal effort to investigate the error and failed to provide the requested information, thereby violating RESPA. As a result, the court grants summary judgment to Wirtz on the RESPA claim.

**III. Fair Debt Collection Practices Act**

Wirtz claims that SLS violated the FDCPA by falsely representing that he was delinquent on his mortgage payments. SLS argues that the FDCPA claim is barred by the statute of limitations. Wirtz responds that each late fee assessed by SLS refreshed the statute of limitations period.

An action to enforce an FDCPA violation must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Communications that "concern[] an old claim ... [do] not start a new period of limitations." <u>Nutter v. Messerli & Kramer, P.A.</u>, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007).

Each late fee assessed by SLS was based on its erroneous determination that Wirtz's account was in default, which it first conveyed to Wirtz in a letter on June 23, 2013. At the latest, the FDCPA claim accrued on October 18, 2013, the date SLS notified Wirtz that his payments were delinquent and that it was attempting to collect a debt. Goerlitz Aff. Ex. 2. As such, Wirtz was required to bring his claim on or before October 18, 2014. All communications and late fees charged thereafter related back to that claim, and did not start a new statute limitations period. Wirtz filed his complaint on May 1, 2015. Accordingly, the FDCPA claim is time barred.

**IV.  Minnesota Mortgage Originator and Servicer Licensing Act**

Wirtz argues that SLS violated MOSLA due to its RESPA and FDCPA violations. SLS responds that it did not violate RESPA or the FDCPA, and therefore did not violate MOSLA.

MOSLA prohibits a mortgage servicer from violating "federal law regulating residential mortgage loans." Minn. Stat. § 58.13, subd. 1(a)(8). As discussed above, the court finds that SLS violated RESPA, a qualifying federal law. Accordingly, SLS also

violated MOSLA, and the court grants summary judgment for Wirtz on that claim.

## V. Breach of Implied Covenant of Good Faith and Fair Dealing

Wirtz argues that SLS breached the implied covenant of good faith and fair dealing by unjustifiably hindering his ability to remain current on his loan payments.

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (quoting Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984)). The duties of the implied covenant extend to a mortgage loan servicer. See Nelson v. Saxon Mortg. Inc., No. 12-CV-1312, 2014 WL 186163, at *19-20 (D. Minn. Jan. 16, 2014) (finding that a mortgage loan servicer must abide by the implied covenant of good faith and fair dealing). In the mortgage servicing context, a breach occurs where a lender refuses to accept a borrower's payment in order to create a default. See Coddon v. Youngkrantz, 562 N.W.2d 39, 43 (Minn. Ct. App. 1997).

SLS's actions did not breach the implied covenant. Wirtz's duty under the contract was to make payments on the loan. SLS's lack of investigation did not prevent Wirtz from meeting that duty, as in Coddon. Accordingly, the court grants summary judgment to SLS.

**VI. Damages**

Wirtz asserts that he has suffered various damages as a result of SLS's conduct. Specifically, he argues that his damages include the $80 he paid for the bank statements, $418.17 in late fees and charges, and the negative effect on his credit reports. He also argues that SLS has engaged in a pattern or practice of noncompliance, entitling him to statutory damages. Finally, Wirtz argues that he is entitled to costs and attorney's fees. SLS denies that Wirtz has suffered any cognizable damages, and denies that it has engaged in a pattern or practice of noncompliance.

As set forth above, SLS is liable under RESPA and MOSLA. A servicer who fails to comply with RESPA is liable to the borrower for "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). A borrower injured by a MOSLA violation has the right to receive: (1) actual, incidental, and consequential damages; (2) statutory damages equal to the amount of all lender fees included in the amount of the principal of the loan; (3) punitive damages if appropriate; and (4) court costs and reasonable attorney fees. Minn. Stat. § 58.18, subd. 1. Wirtz seeks remedies under the first, third, and fourth prongs.

**A. Bank Statement Charge**

Actual damages "must be causally related to a failure to properly respond to a QWR." Marais v. Chase Home Fin., LLC, 24 F. Supp. 3d 712, 727 (S.D. Ohio 2014). Wirtz incurred the $80 to

12

obtain the bank statements as a direct result of SLS's failure to conduct its own investigation and its request that Wirtz provide that information.  Under RESPA and MOSLA, SLS is liable to Wirtz for that fee.

### B.   Late Fees

SLS assessed Wirtz $418.17 in late fees, which may constitute damages.  However, because SLS has waived some of the fees, the court is unable to determine what, if any, damages should be awarded.  Accordingly, the parties shall submit information to the court sufficient to resolve the issue.

### C.   Credit Reports

Wirtz claims to have been damaged by SLS's inaccurate reporting to consumer reporting agencies.  Actual damages include "any losses or injury resulting from damaged credit as a result of [a servicer's] improper reporting to consumer reporting agencies." Marais, 24 F. Supp. 3d at 728.  However, Wirtz has not provided the court with any damages calculation or supporting documentation. Without that information, the court cannot award damages on this basis.  See McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1373 (S.D. Fla. 2009) (noting plaintiffs' failure to support their assertion – that a lender denied them a loan based on their poor credit store – with any documentation, and concluding that "negative reporting to credit agencies alone is insufficient to establish damages").  The court will allow Wirtz the opportunity to

provide such information as set forth below.

Further, SLS is ordered to immediately stop reporting Wirtz's payments as delinquent so far as any such report relates to the misapplied payment. The court also orders SLS to correct its error with any consumer reporting agency to which it reported Wirtz's payments as delinquent.

**D.   RESPA Damages for a Pattern or Practice of Noncompliance**

A servicer may also be liable for statutory damages "in an amount not to exceed $2,000" if the court finds that there was "a pattern or practice of noncompliance" with RESPA. 12 U.S.C. § 2605(f)(1)(B). Wirtz first contacted SLS about the error nearly three years ago. After various efforts to get SLS to correct the error, Wirtz hired an attorney and submitted QWRs. In each response letter, SLS referenced its previous correspondence and considered the matter resolved. SLS never asked Chase for Wirtz's complete servicing records, repeatedly placed the burden to investigate on Wirtz, and continues to report him as delinquent. Under these circumstances, the court finds that SLS has engaged in a pattern or practice of noncompliance with RESPA, and is liable for $2,000 in statutory damages.

**E.   Costs of the Action and Attorney's Fees**

A servicer is also liable, "in the case of any successful action" under RESPA, for "the costs of the action, together with any attorneys fees incurred in connection with such action as the

14

court may determine to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(3). That language parallels the language of Minn. Stat. § 58.18, subd. 1(4), for MOSLA violations. Wirtz has successfully pleaded claims under RESPA and MOSLA, and is entitled to costs and attorney's fees. Wirtz shall submit documentation to that effect.

Consistent with the foregoing, the parties shall submit additional briefing regarding damages, costs, and attorney's fees under 12 U.S.C. §§ 2605(f)(1)(A) and (f)(3), and Minn. Stat. § 58.18, subd. 1(1), (2), and (4). Wirtz shall submit his papers no later than 14 days from the date of this order, and SLS shall submit a response no later than 28 days from the date of this order.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. SLS's motion for summary judgment [ECF No. 23] is granted in part and denied in part as set forth above;

2. Wirtz's motion for summary judgment [ECF No. 25] is granted in part and denied in part as set forth above;

3. SLS shall immediately report to consumer reporting agencies that Wirtz's payments are not delinquent, and make necessary corrections as set forth above; and

    4.    The parties shall submit briefing on the issue of damages, costs, and attorney's fees as set forth above.

Dated: May 9, 2016

                                      <u>s/David S. Doty</u>
                                      David S. Doty, Judge
                                      United States District Court