## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steven L. Wirtz,

                Plaintiff,

v.

JPMorgan Chase Bank, N.A. et al.,

                Defendants.

Civil No. 0:15-cv-02286-DSD-SER

**DEFENDANT SPECIALIZED LOAN SERVICING LLC'S OPPOSITION BRIEF TO PLAINTIFF'S DAMAGES, COSTS AND ATTORNEY'S FEES**

### INTRODUCTION

Defendant Specialized Loan Servicing LLC (hereinafter "**SLS**") submits this opposition to Plaintiff Steven L. Wirtz's (hereinafter "**Mr. Wirtz**") briefing regarding damages and attorney's fees. Mr. Wirtz seeks: (1) actual damages of $80.00 already determined and lender fees of $50.00; (2) statutory damages of $2,000 already determined and Minnesota Mortgage Originator and Servicer Licensing Act (MOSLA) damages of $2,317.22[1]; (3) 190.55 attorney hours, 57.51 law clerk hours, and 19.05 administrative hours totaling $58,468.50; and (4) costs of $1,514.83. The $50.00 lender fee sought is inappropriate at this stage in this case. The MOSLA damages should be stricken. The hourly rates and number of hours are extremely excessive and include significant fees incurred unrelated to this action. Finally, Mr. Wirtz's costs seek some inappropriate costs.

---

[1] SLS has filed a corresponding motion to strike Mr. Wirtz's MOSLA damages for failing to disclose his damage amount and the documents support his claim until his post motion brief regarding damages and attorney fees.

In totality, Mr. Wirtz's damages and attorney's fees must be appropriately limited as provided for as a matter of law and under the lodestar analysis.

## ARGUMENT

### I.   MR. WIRTZ HAS OVERSTATED HIS HOURLY RATES AND THE COLLECTIVE NUMBER OF HOURS INCURRED.

In analyzing Mr. Wirtz's attorney fee award, this Court must conduct a lodestar analysis. Mr. Wirtz seeks $58,468.50 based upon 267.11 hours and various hourly rates incurred by attorneys, law clerks and administrative staff. As this Court is aware, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Missouri,* 127 F.3d 709, 716 (8th Cir.1997). Other factors courts consider in determining reasonableness of fees include: (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Westendorp v. Indep. Sch. Dist. No. 273,* 131 F.Supp.2d 1121, 1125 (D.Minn. 2000) (citing *Zoll v. E. Allamakee Cmty. Sch. Dist.,* 588 F.2d 246, 252 n. 11 (8th Cir.1978)). Mr. Wirtz bears the burden to produce

evidence supporting the hourly rates charged and the hours expended. *See Hensley*, 461 U.S. at 433. Unfortunately, beyond providing the kitchen sink of any and all attorney's fees incurred on behalf of Mr. Wirtz at any point, Mr. Wirtz has done very little to help SLS or the Court to conduct an appropriate lodestar analysis. As outlined below, both the lodestar rates and number of hours are excessive and must be reduced by the court.

### A. THE ATTORNEY HOURLY RATES HAVE BEEN OVERSTATED FOR THE PURPOSE OF LITIGATION.

Counsel for Mr. Wirtz have increased their hourly rates for the sole purpose of their attorney's fee award in this litigation. The Court could go through the multiple factors outlined above for a reasonable lodestar hourly rate, but the best evidence of the prevailing market rates for lawyers of the skill levels at issue here are the hourly rates charged by Mr. Wirtz's counsel when someone was actually paying them an hourly rate. *See Blum v. Stenson*, 465 U.S. 886, at 895 n. 11, 104 S.Ct. 1541(1984) (reasonable hourly rate is prevailing market rate in relevant legal community for similar services by lawyers of comparable skills, experience and reputation). Mr. Wirtz's original fee arrangement with counsel was to pay them their hourly rate for sending the Qualified Written Request (QWR) letters under the Real Estate Settlement Procedures Act (RESPA). (Eaton Aff. ¶ 10). As shown in the affidavit of Daniel M. Easton, the hourly rates actually charged to Mr. Wirtz (November 2013 – September 2014) were as follows:

| | |
|---|---|
| Daniel M. Eaton (*id*. at ¶ 14 a, p. 4-10). | $235.00 per hour |
| Carl Christiansen    (*id*. at ¶ 14 b, p. 10) | $275.00 per hour |
| Cole W. R. Langsdorf (*id*. at ¶ 14 e, pp. 13-14). | $85.00 |

Lisa Robertson (*id*. at ¶ 14 g, pp. 18-19).                    $85.00 & $105.00 per hour

Once the matter proceeded towards litigation, the hourly fee arrangement changed to a

hybrid fee arrangement. (*Id*. at ¶ 11). Now that Mr. Wirtz is seeking that SLS pay for the

fees, the hourly rates increased as follows:

Daniel M. Eaton (*id*. at ¶ 14 a, p. 4).                    $275.00 per hour

Cole W. R. Langsdorf (*id*. at ¶ 14 e, pp. 13-14).                    $130.00 per hour

Lisa Robertson (*id*. at ¶ 14 g, pp. 18-19).                    $150.00 per hour

Mr. Langsforf also became licensed to practice law and started charging an increased rate

of $245.00 per hour. (*Id*. at ¶ 14 c, pp. 10-12). Joshua G. Hauble, whose experience is

unknown, charged an increased new associate hourly rate of $245.00 per hour as well. (*Id*.

at ¶ 14 d, pp. 12-13). As a law clerk, Aaron D. Sampsel charged the increased law clerk

hourly rate of $130.00 per hour. (*Id*. at ¶ 14 f, p. 17). Based upon the information submitted

by Mr. Wirtz and the hourly fees he would have actually paid (i.e. a true market rate), the

lodestar hourly fees should be as follows:

Carl Christiansen                    $275.00 per hour

Daniel M. Eaton                    $235.00 per hour

Joshua G. Hauble                    $195.00 per hour[2]

Cole W. R. Langsdorf (Attorney)                    $195.00 per hour

Lisa Robertson                    $85.00 & $105.00 per hour

Cole W. R. Langsdorf (Law Clerk)                    $85.00 per hour

---

[2] Because there is a $40.00 per hour difference between Mr. Christiansen and Mr. Eaton, SLS does a corresponding decrease for the firms newer associates. No other information has been provided for these attorneys.

Aaron D. Sampsel                        $85.00 per hour

Accordingly, reduced rates should apply to each individual and Mr. Wirtz should not

allowed to increase counsel's market hourly rates solely for the purpose of this litigation.

## B. THE TOTAL NUMBER OF HOURS ARE UNAPPORTIONED, NOT REASONABLE AND EXCESSIVE.

Besides trying to inappropriately pile on with their hourly rates, those actions are

actually far less egregious then the excessive billings on this matter. As here, "where the

documentation of hours is inadequate, the district court may reduce the award

accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. In sum, SLS' counsel has a total

of a little over one-hundred hours in this matter and Mr. Wirtz has 267.11 hours of total

time[3] with at least 72.01 hours in sending the QWR letters and drafting the complaint,

which does not include the hours Mr. Eaton incurred. Little question exists why these cases

cannot be resolved with such excessive billings. The most important problem, however, is

Mr. Wirtz kitchen sink request for fees without any review for duplication, excessiveness,

work done on dismissed unrelated claims or work done solely with Chase. Instead, SLS

and the Court get to review the multiple generic, duplicative billings and make sense of it.

As outlined below, these fees should be significantly reduced.

---

[3] Something has also occurred with the dates on the time entries for Mr. Wirtz's counsel. For example, the deposition in this matter occurred on January 7, 2016, but the time records state the time occurred on February 2, 2016. Similarly, Mr. Wirtz filed his reply memorandum in April 15, 2016, but the time entries state the time occurred on May 1, 2016. This issue appears to exist throughout the time entries and raises further issues regarding the veracity of the time incurred and Mr. Wirtz satisfying his burden to provide appropriate time records.

### 1.    Limited to Fees and Costs Incurred in this Action

Under 12 U.S.C. § 2605(f)(3) and Minnesota Statute Section 58.18, subdivision 1(4), the Court has already acknowledged that Mr. Wirtz is only entitled to "the costs of the action, together with any attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." (Order pp. 14-15). Despite the clear language of both statutes and this Court's Order, Mr. Wirtz seeks any and all fees he has incurred since retaining counsel. This is an improper attempt to inflate his attorney fee award.

Also important, an unbelievable amount of time was spent doing legal research and drafting a complaint. Mr. Hauble incurred 14.50 hours just on the drafting of the Complaint. (East Aff. ¶ 14 d, p. 12-13). As a law clerk, Langsdorf incurred 57.51 hours on letters and drafting the Complaint. (*Id*. at ¶ 14 d, p. 12-13). Mr. Easton spent 17.3 hours on reviewing the letters and drafting the Complaint. (*Id*. at ¶ 14 a, p. 4-17).   After limiting the drafting of the Complaint to a reasonable number of hours (counsel for SLS has generally seen around 10 hours of time claimed by consumer counsel for drafting initial pleadings), Mr. Wirtz fee request should begin with all fees and costs incurred from May 1, 2015 forward – i.e. the actual attorney fees incurred in this action.

By SLS' count, the total fee hours incurred after May 1, 2015 were as follows:

| | |
|---|---|
| Carl Christiansen | None |
| Daniel M. Eaton | 134.85 (at $235/hr = $31,689.75) |
| Joshua G. Hauble | None |

| | |
|---|---|
| Cole W. R. Langsdorf (Attorney) | 23.50 (at $195/hr = $4,582.50) |
| Lisa Robertson | 13.8 (at $105/hr = $1,449.00) |
| Cole W. R. Langsdorf (Law Clerk) | 2.35 (at $85/hr = $199.75) |
| Aaron D. Sampsel | 6.40 (at $85/hr = $544.00) |

Once the fees have been appropriately reduced to a reasonable amount for drafting a complaint (10 hours of time at $235 per hour) and to those reasonable incurred in this action, the starting point for the award is then $40,815.00 and the additional factors must then be considered for multiple billings, work done on unrelated claims that were dismissed and work down as to Chase only.

## 2.    Multiple Billing

Because they have resorted to the kitchen sink method of calculating attorney's fees, counsel for Mr. Wirtz has made no attempt to exercise any "billing judgement" with respect to the fees and costs incurred. "In *Hensley,* Justice Powell explained that it is incumbent upon attorneys to exercise "billing judgment" with respect to hours worked:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*U.S. ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 715 (D. Minn. 2009) (*citing Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). Instead, counsel for Mr. Wirtz relies solely on its generic billing entries with multiple individuals reviewing and drafting certain

documents. Instead of reviewing someone else's generic billing, SLS submits its counsel's time for in camera review showing its one hundred hours are an appropriate measure of proper "billing judgment" on this matter. (Goerlitz Aff. ¶ 6, Ex. 5). Since the counsel for Mr. Wirtz failed to exercise billing judgment, and it would be disingenuous for SLS to claim the hours incurred by Mr. Wirtz should be less than its hours incurred, at a minimum, the Court can compare entries and use its own billing judgment. After removing multiple billings the reasonable number incurred with billing judgment should match SLS' 100 hours. This reduces Mr. Wirtz fee award to $23,500 before considering work on unrelated claims and Chase's settlement amount.

### 3.    Work Done on Unrelated Claims

Counsel for Mr. Wirtz also fails to account for any time incurred on his three unsuccessful claims – breach of contract, breach of duty of good faith and fair dealing and the Fair Debt Collection Practices Act (FDCPA). "Where a plaintiff fails to prevail on a claim that is distinct in all respects from his successful claim, 'the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.'" *U.S. ex rel. Thompson v.* 621 F. Supp. 2d at 716 (citing *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933). Mr. Wirtz, however, argues he should be compensated for his time spent on unsuccessful claims because they were related to his successful claims and only would have amounted to $1,000 in damages. S*ee Id*. at 440, 103 S.Ct. 1933 (a party can be compensated for unsuccessful claims related to successful claims). Mr. Wirtz is wrong

because his claims were distinct and the damages significant when compared to his recovery[4] in this case.

"Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'" *Id*. at 435, 103 S.Ct. 1933. *See also Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir.1997) (en banc). Although Mr. Wirtz prevailed on his primary claim under RESPA and MOSLA, he chose to assert other claims that failed and were dismissed by the Court. No question exits time was spent on those claims, including pleading, discovery and summary judgment briefing. The breach of contract claim involves a completely separate set of law from the RESPA and MOSLA claims and the facts alleged focus on an alleged extra payment. (*See*, e.g. Compl. ¶ 93). This alleged extra payment would have been another $819.39 in alleged damages.

Similarly, the FDCPA claim involves separate law and involved SLS' statement the loan was past due which, although somewhat related, involved distinct facts separate and apart from the QWR process. (*See, e.g. id.* at ¶ 105). This claim included additional alleged damages of $1,000. Given the additional damages sought, and the fact these damage amounts are significant when compared to actually damages being awarded to Mr. Wirtz, the breach of contract and FDCPA claims were not alternative claims for relief or trivial.

Because the Court dismissed three of Mr. Wirtz's five claims, a further reduction of fifty percent of the 100 proper billing hours is warranted to apportion the successful claims

---

[4] Under his hybrid fee arrangement, Mr. Wirtz will not get any of the attorney fees awarded in this case and, thus, any amount of damages awarded to him should be considered significant when you consider the amount of his actual damages.

from the unsuccessful claims. This reduces the award to fifty hours, or $11,750. This is an appropriate lodestar fee for this case.

### 4.    Chase's Fees

Mr. Wirtz takes the position that SLS should be responsible for all of the fees in this action, including the fees that relate to Chase. SLS should not be responsible for any of Chase's fees. A review of the time entries indicates a number of entries directly related to Chase only and those entries should not be attributable to SLS. In the event the Court does not accept SLS' lodestar analysis with a lodestar rate of $235 per hour at 100 hours and then a reduction to fifty percent for the unrelated claims, the Court must account for the fees and costs solely related to Chase and not make SLS' response for Chase's fees. SLS also reserves the right to supplement its briefing upon disclosure of the Chase settlement agreement to the extent its terms impact Mr. Wirtz's claim that SLS pay for Chase's attorney fees.

## II.    SLS SHOULD NOT BE RESPONSIBLE FOR CHASE'S COSTS AND COUNSEL'S RENTAL CAR UPGRADE.

The costs sought should also appropriately be reduced. Mr. Wirtz's costs are typical with the exception of his rental car upgrade and SLS being responsible for costs attributable to Chase. Again, Mr. Wirtz does not properly account for the costs incurred while both SLS and Chase were parties. SLS should not be responsible for Chase's service at $25.00 or all the costs incurred while Chase and SLS were both parties – reducing the filing fee and scheduling conference parking costs. In addition, counsel for SLS incurred car rental

fees of $105.44 for rental of mid-size car for two attorneys[5]. Counsel for Mr. Wirtz rented a Ford Explorer for himself, and acknowledged he obtained an upgrade at the airport, a cost of $262.92. Thus, the costs should appropriately be reduced by $$238.00 for half the filing, half the parking fee and service upon Chase and another reduction of $157.06 for the excessive rental car cost.

### III.   THE CORRECTION OF THE ACCOUNTING OF MR. WIRTZ'S LOAN IS DEPENDENT UPON THE CHASE SETTLEMENT.

As part of Mr. Wirtz's damage claim, he wants to add further relief to his summary judgment motion. At no point in Mr. Wirtz's summary judgment motion did he request the loan be corrected – his sole focus was on recovering attorney fees. Now, Mr. Wirtz asks for the additional relief that SLS correct its internal accounting of Mr. Wirtz's loan. This late request highlights SLS' issue with the Chase settlement and the failure of those parties to provide any information regarding whether to correct the alleged payment error or not. As counsel for SLS specifically stated to counsel for Mr. Wirtz and Chase, no information was provided to SLS from either Mr. Wirtz or Chase as to whether the error should be corrected. (Goerlitz Aff. ¶¶ 5-6, Ex. 4). No direction was provided regarding the error. It is further reasonable that the Chase's settlement with Wirtz included payment for the error and it was up to Mr. Wirtz to pay some of that money to correct the error. Again, SLS is left in the lurch because no direction or information will be provided.  Accordingly, SLS

---

[5] In event the fact two attorneys rented this car together for unrelated reasons (i.e. the other counsel met with clients during the deposition), SLS did not have attorney's fees for the deposition.

has filed a separate motion to compel disclosure of the settlement between Chase and Mr. Wirtz. Upon receipt of the settlement, SLS will supplement its response regarding this issue.

### IV.   MR. WIRTZ CANNOT NOW CHANGE HIS THEORY ON ACTUAL DAMAGES.

Despite Mr. Wirtz only focusing on actual damages of alleged late fees that he never paid and were removed from his loan by SLS, he now wants to change his theory to include a corporate advance fee. Other than concluding that he was wrongly-charged the fee and there was no reason to charge him the fee, no affidavits or any supporting information have been provided by Mr. Wirtz regarding this fee. Although it is only a $50 fee, Mr. Wirtz should have a better handle on his alleged damages regarding this matter and not be able to change his theory and claim fees through conclusory statements in a brief. Mr. Wirtz has had multiple months to determine what, if any, fees he actually paid and other then adding together uncollected fees, neither he nor his counsel have taken that opportunity to determine whether he actual paid any fees to SLS. Mr. Wirtz has failed to properly file any appropriate evidence to support this fee, nothing in the record confirms the conclusion it is an wrongly-charged fee and Mr. Wirtz should not be allowed to add it at this late stage.

### <u>CONCLUSION</u>

For the reasons stated above, the Court should reduce Mr. Wirtz's claim for damages and fees to only those properly allowed as a matter of law and proper under the lodestar analysis. In sum, based upon its summary judgment order, the Court should only award Mr. Mr. Wirtz the following damages and fees:

- Actual damages of $80 for bank statement charges;

- RESPA Statutory Damage of $2,000;

- Attorney fees of $11,750 (1/2 100 hours at $235/hr); and

- Costs of $1,126.77.

**PFB LAW, PROFESSIONAL ASSOCIATION**

DATED: June 6, 2016                   /s/ Jared M. Goerlitz                   .
                                      Jared M. Goerlitz (#386714)
                                      *jgoerlitz@pfb-pa.com*
                                      55 East Fifth Street, Suite 800
                                      St. Paul, MN  55101
                                      Phone: (651) 291-8955
                                      Fax: (651) 228-1753
                                      *Attorneys for Defendant Specialized Loan Servicing LLC*